## LETTEAU v. BOYLE.   (No. 7034.)

(Court of Civil Appeals of Texas.   San Antonio.   Nov. 28, 1923.)

**1. Bills and notes ⟜518(2) — Finding that payee knew notes were signed for accommodation held sustained.**

In action on notes defended on the ground that defendant was merely an accommodation surety who had received no consideration and was discharged by sale of collateral deposited with payee and application of proceeds on maker's other notes not signed by defendant, evidence *held* to sustain findings that defendant signed the notes as an accommodation surety and not as a principal, and that the payee had knowledge of such fact.

**2. Principal and surety ⟜114—Accommodation surety held discharged by payee's application of collateral.**

Where maker deposited collateral with payee sufficient to cover amount of notes, payee's sale of collateral and application of proceeds on other notes *held* to discharge accommodation surety on first-mentioned notes, since the surety's contract was materially altered by the act of the payee in depriving him of the benefit of the fund for the payment of the debt.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by George H. Letteau against R. J. Boyle.   Judgment for defendant, and plaintiff appeals.   Affirmed.

I. H. Burney, of San Antonio, for appellant.

W. F. Ezell, of San Antonio, for appellee.

FLY, C. J.   Appellant, a resident of Los Angeles, in the state of California, instituted suit against R. J. Boyle on two promissory notes, one for $1,000, dated August 11, 1917, the other for $500, dated September 18, 1917, the first being due 30 days after date and the other 60 days after date.   Appellee answered admitting executing the notes at the instance and request of J. L. Boyle and merely for his accommodation and upon the representation of said J. L. Boyle that he had deposited with appellant collateral far in excess of the amount of the notes, and that appellee would not be called upon to pay the amount of the notes; that appellee had not received anything from the notes, and his signing of the same was without any consideration, and he was simply an accommodation maker or surety for said J. L. Boyle; that appellee was not advised that said notes had not been paid at their due dates until April, 1921, when said J. L. Boyle sent a new note for $1,500, dated April 1, 1921, with the request that appellee sign it and with the information that appellant had sold all the collateral deposited with him to secure the two notes sued on, but had not applied any of the proceeds on said notes.   Appellee refused to sign the new note or pay the two old notes.   The cause was tried by the court without a jury and judgment rendered that appellant take nothing by his suit.

We adopt the following findings of fact of the trial judge as the conclusions of fact of this court:

"George H. Letteau, plaintiff herein, in 1917, and for several years prior thereto, was engaged in the business of lending money in the city of Los Angeles, Cal., and J. L. Boyle, who has resided in Los Angeles, Cal., for many years, had obtained numerous loans from said George H. Letteau and had pledged with said George H. Letteau as collateral to secure the payment of loans made him, shares of stock in the Penn Midway Oil Company, and other securities; on August 11, 1917, the defendant, R. J. Boyle, signed with J. L. Boyle a note for $1,000, dated 'Los Angeles, California, August 11, 1917,' due 30 days after date, payable to George H. Letteau, or order, at the First National Bank of Los Angeles, Cal., bearing interest at the rate of 8 per cent. per annum, payable monthly until paid, and on September 18, 1917, R. J. Boyle signed with J. L. Boyle a note for $500, dated 'Los Angeles, California, September 18, 1917,' payable 60 days after date to George H. Letteau, or order, bearing interest at the rate of 8 per cent. per annum from date until paid, and being the notes sued on.   R. J. Boyle, defendant, who resided in San Antonio, Tex., but who was temporarily in Los Angeles, Cal., at the time said notes were executed, did not receive any part of the funds represented by said notes, but the moneys represented thereby were paid to J. L. Boyle, and R. J. Boyle signed said notes as an accommodation maker with the understanding and agreement that the said J. L. Boyle had placed with said Letteau ample collateral to secure the payment of said notes, and that said collateral should be held by plaintiff to secure the payment of said notes sued on herein, and that plaintiff was familiar with the transactions when said notes were executed, and that the said R. J. Boyle would not be called upon to pay same; that such representation and understanding was the inducement of said R. J. Boyle to sign said notes, because the said R. J. Boyle had theretofore advanced said J. L. Boyle a great deal of money and paid a great many notes which he, the said R. J. Boyle, had signed for him, for which he had not been repaid; that said George H. Letteau knew that said R. J. Boyle signed said two notes as an accommodation maker; that subsequent to said time the said J. L. Boyle borrowed from George H. Letteau, plaintiff, $150 and gave said Letteau his note therefor, $50 and gave said Letteau his note therefor, and $325 and gave said Letteau his note therefor.

"R. J. Boyle heard nothing from J. L. Boyle, or George H. Letteau, with reference to said two notes he signed as an accommodation maker, or the sale of said collateral, until April, 1921, and did not know until that time that said notes had not been paid at maturity, or that said collateral had been sold.   In April, 1921, J. L. Boyle sent to R. J. Boyle a new

note for $1,500 as renewal of the said two obligations, and at the same time advised said R. J. Boyle that the said two notes had not been paid and that the collateral put up to secure them had been sold and the proceeds applied to the payment of the other debts, or the money turned back to him, and also wrote said R. J. Boyle that plaintiff Letteau had cut his interest from 24 per cent. to 12 per cent.; the said R. J. Boyle thereupon refused to sign any renewal of said two notes or to pay the same. In April, 1921, J. L. Boyle was insolvent and has been ever since said time and is now insolvent.

"On November 23, 1920, plaintiff, George H. Letteau, sold the Penn Midway Oil Company stock—which was pledged with him as collateral by J. L. Boyle to secure the payment of the various notes signed by J. L. Boyle to George H. Letteau, including the two notes sued on and one executed prior to the two notes here sued upon, and three of them executed subsequent thereto—for $8,255.65, and applied the proceeds to the payment of all of said notes, except the notes sued on, and to J. L. Boyle's share of the Boyle-Gimmell note, and to the payment of orders filed with him by one Thomas and Doran & Co., and to the payment of interest on said several obligations, the aggregate amount so applied being $6,707.45, and plaintiff paid to J. L. Boyle in cash, out of the proceeds of said collateral, on November 23, December 4, and December 14, 1920, an aggregate sum of $1,548.20, and returned to said J. L. Boyle other collateral also held by him to secure said several debts.

"The only obligations due by said J. L. Boyle to said George H. Letteau between August 11, 1917, and said November 23, 1920, was one note for $3,500, which bore interest at the rate of 24 per cent. per annum up to January 1, 1918; the two notes sued on aggregating $1,500, which bore interest at the rate of 8 per cent. per annum, and three notes aggregating $525, which bore interest at the rate of 12 per cent. per annum.

"While George H. Letteau testified that there was also outstanding and due him a note of J. L. Boyle for $1,200, the statements attached to said Letteau's deposition, and introduced in evidence, show that the $1,200 note was in fact executed on November 23, 1920, the date when said collateral was sold and applied as aforesaid.

"Interest on the $3,550 note and three notes aggregating $525 at the highest legal rate of interest, 10 per cent., would be $407.50, and interest on the two notes aggregating $1,500, herein sued on, at the rate named in the notes would be $120, and, while the evidence does not show why the three notes aggregating $525 were executed, I assume, for the purpose of this interest calculation and finding, that they were outstanding during the period from August 11, 1917, to November 23, 1920, when said collateral was sold.

"Legal interest for the five months beginning August 1, 1917, and ending December 31, 1917, would be $219.50, and J. L. Boyle actually paid to said Letteau on said several obligations $534 interest during said time. Interest on said several obligations from January 1, 1918, to December 31st, at the rate of 10 per cent. and 8 per cent. would be $527.50, and said J.

L. Boyle actually paid $621 interest. For the year 1919 the interest on said obligations at 10 per cent. on other than the notes sued on, and 8 per cent. on the notes sued on, would be $527.50, and said J. L. Boyle actually paid $636. For the year 1920 the interest on said obligations would be $483.60, and said J. L. Boyle actually paid $583 interest from January 1, 1920.

"J. L. Boyle had been drawing drafts on R. J. Boyle in favor of George H. Letteau for several years both prior and subsequent to the signing of said notes by the said R. J. Boyle as an accommodation maker for said J. L. Boyle, and said J. L. Boyle was paying said Letteau 24 per cent. interest prior to August 1, 1918, and the usurious interest hereinabove detailed subsequent to August 1, 1918, but R. J. Boyle did not know that such usurious interest was being charged.

"Plaintiff was authorized and had the right to apply the balance of the proceeds of the sale of said collateral to the payment of the notes sued on. Said collateral was sold without notice to defendant and more than $1,500 turned over to J. L. Boyle, by plaintiff, is fraud of his defendant's rights to have same applied in satisfaction of the notes sued on."

[1] The first to the ninth assignments of error, inclusive, attack the findings of fact as not sustained by the evidence adduced on the trial. The evidence of appellant showed that on November 23, 1920, collateral placed with him by J. L. Boyle was sold for $8,255.65, and at that time J. L. Boyle's indebtedness to him, including the $1,500 was about $6,226.20. He paid to J. L. Boyle out of the money for the collaterals the sum of $1,533.20, and paid Mr. Thomas $1,593.75, and Doran & Co. the sum of $283.90. He made no effort to protect the interest of appellee, who he knew was a mere accommodation signer of the two notes. No other conclusion could be reasonably reached from the testimony than that appellant knew that appellee received no benefit pecuniary or otherwise from the notes, and it would be a reflection on the intelligence of any man, and especially that of a money lender, who knew how to extract 24 per cent. interest out of the borrowers, to assume that he did not know that the brother in Texas, who had furnished so much money to pay the debts of the brother in California, was not a principal but a mere accommodation surety on the two notes. For nearly four years after the notes became due he made no effort to collect them, and gave no word of notice to appellee that he was allowing the maker of the notes to borrow more money and consume the security for the two notes. After the collateral had been consumed, appellee was informed that the notes which he had signed had not been paid. He not only paid himself all that was owing him, but paid about $1,800 out of the collateral security to other parties. What was paid to the latter may have come out of collaterals placed in their hands by J. L. Boyle for their

benefit and turned over by them to appellant, but the fact remains that a large sum of money was paid over to J. L. Boyle when he was owing the notes sued on which were signed by appellee as an accommodation.

It is inconceivable that appellant did not know that appellee was receiving no benefit from the money paid J. L. Boyle. From time to time appellee had paid checks drawn on him by J. L. Boyle for the latter's debts, and all the circumstances tended to show that appellee was a mere surety. The notes were drawn in the singular number, for money paid by appellant to J. L. Boyle. Of course, this would not be conclusive, but it is a circumstance in this case.

[2] It can be clearly inferred from the testimony that the notes sued on were given to cover debts owing by J. L. Boyle alone. Appellee had never had any business transactions with appellant, and had never met him but once, and that was in a social way. It was the debt of J. L. Boyle that was covered by the two notes. Appellant while attempting to conceal this fact, in endeavoring to show that the collaterals which he held were not sufficient to cover the two notes as well as the other indebtedness, gave utterance to language that spoke volumes in showing beyond doubt that the debts were those of J. L. Boyle. In answering so as to show the collaterals were inadequate, he said: "If he had, I would not have asked for a cosigner." By "he" J. L. Boyle is referred to, and the "cosigner" was to be to the notes for $1,000 and $500. That expression dropped by the money lender showed that the debt was that of J. L. Boyle and that he had required him to get his brother, R. J. Boyle, to sign the note as a "cosigner" or, in other words, as a surety. He had J. L. Boyle in his tentacles, and he compelled him to go out and obtain the signature of a loving and too confiding brother to the notes as a "cosigner." Appellant made no claim that he had ever lent any money to appellee, but said: "I have made loans to Mr. J. L. Boyle from time to time." He admitted his familiarity with the transactions connected with the two notes and that he had required of J. L. Boyle to get a "cosigner" on the notes. He also unguardedly testified that the collaterals were given for "various loans at different times," although he said that the collaterals were not held as security for the two notes on which the name of appellee appeared. J. L. Boyle told appellee that the collateral was given to secure the two notes, and this was far more credible than the statement that the collaterals stood good for all debts but the two notes. Appellant swore that the collateral security was placed with him to secure the $3,550 note, and yet he used part of the proceeds of the sale of the collaterals to pay off two other notes. The money lender was undoubtedly

holding the collaterals to secure existing as well as future loans that he expected to make and did make. He knew that the collateral was given to secure the debt sued on, and he knew that appellee was a mere surety, and yet he ignored his claims. It was his duty to protect the surety. When by the act of the creditor the surety has been deprived of the benefit of a fund for the payment of the debt, the contract is materially altered and it is no longer the contract of the surety, and he is discharged. Brandt Sure. & Guar. §§ 483 and 498.

The judgment is affirmed.